IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARJUAN D. ADKINS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00986-SMY-MAB |
| | ) |
| **RICHARD WATSON,** | ) |
| **TRINITY SERVICE GROUP, and** | ) |
| **DAVID MARCOWITZ,** | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**BEATTY, Magistrate Judge:**

This matter is before the Court on the Defendants' Motions for Summary Judgment on the issue of exhaustion of administrative remedies (Docs. 78, 80, and 81). The motions have been referred to the undersigned by United States District Judge Staci M. Yandle pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation (Doc. 99). For the reasons delineated below, the undersigned **RECOMMENDS** that the District Court **ADOPT** the following findings of fact and conclusions of law and **GRANT** the Defendants' motions.

## BACKGROUND

Plaintiff Carjuan D. Adkins filed this civil rights action on September 25, 2020 pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was a detainee in the St. Clair County Jail ("Jail") (Doc. 1). Plaintiff claims that direct and secondhand exposure to e-cigarettes has caused him to develop high blood pressure. He

also alleges that secondhand vapor, poor ventilation, overcrowding, and communal living have contributed to the spread of the covid-19 virus in the Jail.

Following his first exposure to a covid-19-positive inmate in June 2020, Plaintiff was placed in quarantine for seven days. When Plaintiff reported his symptoms to Dr. Marcowitz and requested covid-19 testing, his request was denied until he eventually tested positive for the virus on September 11, 2020. He contends Sheriff Watson, the Jail Administration/Staff, Jail Nurses, and Dr. Marcowitz took inadequate steps to prevent, diagnose, and contain the virus.

Following screening of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims (Doc. 12):

> Count 1: Fourteenth or Eighth Amendment claim against Sheriff Watson and TSG Commissary for instituting a policy, custom, or practice of allowing e-cigarettes at the Jail.
>
> Count 2: Fourteenth or Eighth Amendment claim against Sheriff Watson for subjecting Plaintiff to unconstitutional conditions of confinement, including exposure to e-cigarette smoke, overcrowding, insects, and mold.
>
> Count 3: Fourteenth or Eighth Amendment claim against Sheriff Watson and Dr. Marcowitz for exposing Plaintiff to conditions of confinement that posed a substantial risk of serious harm caused by the novel coronavirus, including exposure to covid-19-positive inmates, denial of protective gear, and denial of adequate testing for the virus.
>
> Count 4: Fourteenth or Eighth Amendment claim against Dr. Marcowitz for denying Plaintiff adequate medical care for symptoms of covid-19, following Plaintiff's development of symptoms in June 2020.

Defendants raised the affirmative defense of failure to exhaust administrative remedies in their Answers and, subsequently, filed motions for summary judgment on that issue (Docs. 78, 80, 81). Plaintiff filed a global response in opposition to the motions (Doc. 91). The Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on January 10, 2022 (Doc. 107). Plaintiff appeared by counsel and testified via video from St. Clair County Jail (*Id.*). Defendants appeared by counsel and offered the testimony of Shane Collins, a Captain at the St. Clair County Sheriff's Department (*Id.*).

## FINDINGS OF FACT

### A. Grievance records

Plaintiff submitted the following grievance documents at the Jail prior to the filing of this lawsuit that relate to medical issues and/or the covid-19 virus.

> May 3, 2020 Complaint: Plaintiff grieves "Detainee Rules by law of St. Clair tobacco products give high blood pressure traditionally dependence ppl with high blood pressure nicotine reduce from misuse or intentional breaking etc. Sheriff Department trinity commissary as required etc. products of the St. Claire County Jail." (Doc. 80-3, p. 7).

> June 3, 2020 Complaint: "On May 4th I was escorted to infirmary b/c I couldn't breathe or eat my food, I needed to be seen by the medical and never got treatment, C/O's and nurse bonnie put something in my nose and injected the fluid which choked me. I was laying face down on the floor they tried to pick me up while I was in pain and I couldn't move, so the jumped on me tasered me then punched me in my head then took me to quite room and repeated the same action." (Doc. 80-3, p. 8)

> September 11, 2020 Complaint (marked "Emergency Grievance"): Plaintiff grieves that his pre-existing health conditions and the very real danger of covid-19 contagion in the facility is tantamount to cruel and unusual punishment in violation of the Eighth Amendment, which prohibits a detainee from exposure to serious contagious diseases. He has been housed with detainees on quarantine that were exposed to a detainee who died

from the covid-19 virus and others that tested positive for the virus. He filled out a request to be released due to the 81 cases of covid-19 including 1 death. He has been purposely denied complaint forms. When he was able to submit complaints about prison conditions and the negligence of the Jail staff, they were ignored. He was exposed to covid-19 via the ventilation system. (Doc. 80-3, p. 36-40).

September 20, 2020 Grievance: "Trinity Commissary (T.S.G.) violated my Constitutional rights by exposure to serious contagious covid-19 virus, deliberate indifference to serious medical need knowing the virus is in the jail, negligence of detainee's health issues in accordance with the 8th Amendment cruel and unusual punishment b/c I tested positive for the covid-19 virus…." (Doc. 80-3, p. 18, 41).

September 20, 2020 Grievance: Plaintiff grieves that that he "tested positive for the covid-19 virus in the custody of St. Clair Co. Sheriffs department, Richard Watson failed to provide safety and security through negligence in accordance with deliberate indifference to a serious medical, due to the fact this facility reach well over the full capacity from crowdedness, prison condition not allowing masks in the blocks or supplying proper test, and exposure to serious contagious diseases, 8th Amendment cruel and unusual punishment … 14th Amendment equal protection." (Doc. 80-3, p. 19, 42)

September 20, 2020 Grievance: Plaintiff grieves that he "tested positive for the covid-19 virus Dr. David Marcowitz through Wexford health Service violated my constitutional rights by not supplying accurate test for detainees or order masks and gloves to be allowed in the blocks for protection being negligence towards my health complications in results of me eventually being diagnosed of high blood pressure exposure to serious contagious diseases or virus knowing Trinity Commissary TSG is the problem with health complications in accordance with deliberate indifference to serious medical need 8th Amendment cruel unusual punishment." (Doc. 1, p. 11).

Plaintiff submitted other grievance documents in June, July, August, and September 2020 that are not relevant to the claims in this lawsuit.

### B. *Pavey Hearing*

Plaintiff expressed an understanding of the Jail's grievance procedure. He testified a detainee must first request a complaint form from a staff member. After the complaint

is submitted, there is a waiting period for a response from Captain Collins. Once the response is returned to the detainee, a grievance form can be requested. After the grievance form is submitted, the detainee must wait for a response. The wait is longer than what is stated in the written grievance procedure.

As soon as Plaintiff received a response to a complaint, he would request a grievance form and submit the grievance. He claimed to have filed a number of complaints where he did not receive a response. When he did not receive a response, he would submit another complaint. There were times when his requests for complaint forms were ignored and, at other times, the Jail ran out of complaint and/or grievance forms. According to Plaintiff, for about four to five months beginning in June 2020, the Jail ran out of forms.[1]

When he was housed with individuals that had the covid-19 virus, he repeatedly asked for complaint forms to request to be moved. Then he tested positive for covid-19 and continued to request complaint forms because they were not providing adequate care for people with the virus. He wrote a lot of complaints about covid-19 because he was sleeping on the floor while sick with the virus and needed help. When he finally received a complaint form, they ignored his complaint. That is why he submitted the September 11, 2020 "emergency grievance" to Major Grime. Once he received a response, he filed a grievance on Trinity, Dr. Marcowitz, and the Jail. After he submitted them, he wrote out this lawsuit and filed it.

---

[1] As outlined below, this assertion is contradicted by the documentary evidence, which shows that Plaintiff submitted a host of grievance documents during this time period.

Defendants offered the testimony of Shane Collins, a Captain at the Jail. Collins oversees the grievance policies for detainees at the Jail. There is a two-step process – step 1 is the complaint process (submission of a complaint form a/k/a "Captain's request" form) and step 2 is the grievance process (submission of a grievance form). In order to exhaust grievance procedures at the Jail, a detainee must complete both the complaint process and the grievance process. A complaint must be submitted within twenty-four hours. The complaint form is in duplicate – the original and carbon copy are submitted together by the detainee. After a response is given, the original is maintained by the Jail and the carbon copy is returned to the detainee. The Jail does not maintain a log of complaints received from detainees. Jail officials verify a detainee has submitted a complaint and received a response before they will provide a grievance form.

According to the Jail records, Plaintiff submitted twenty-nine complaints and three grievances during his incarceration from January 2020 to April 2021. Collins is aware that Plaintiff maintains he submitted complaints that were not returned to him. Collins does not have personal knowledge to contest that assertion.

## LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). When a motion

for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742. After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Id.*

### B. *The Prison Litigation Reform Act*

Lawsuits filed by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. Because exhaustion is an affirmative defense, the burden of proof is on the defendants to demonstrate that a grievance process was available to the plaintiff, and the plaintiff failed to comply with the grievance process. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). For a prisoner to exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement, however, "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must

exhaust available remedies, but need not exhaust unavailable ones." *Reid*, 962 F.3d at 329 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010); *Pavey*, 544 F.3d. at 742; *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002). The availability of the grievance process is a fact-specific inquiry. *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018).

### C. St. Clair County Jail Grievance Procedure

The St. Clair County Jail's grievance procedure is outlined in the Jail's Detainee Rules and Regulations Handbook.

> Step 1. A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it. The immediate supervisor shall provide a written response to the grieving detainee within 3 days after receiving the grievance. The original will be forwarded to the Jail Superintendent.
>
> Step 2. If the grievance is not resolved to the detainee's satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty-eight (48) hours through the on duty shift supervisor. The grievance must be submitted to the Jail Superintendent within 3 days (not including weekends and holidays) of the decision of the Assistant Superintendent. The Jail Superintendent will review the response(s) and approve/disapprove them; if he disapproves them, he will take the necessary action to revise the previous response(s) according to the St. Clair County Jail Policies and Procedure Manual or to

his professional opinion in a fair and impartial manner and return to the detainee within three (3) duty days. This shall constitute the final resolution of the grievance.

NOTE: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captain's request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the jail Superintendent needs to be notified.

(Doc. 80-2, p. 11).

## CONCLUSIONS OF LAW

Based on the evidence presented in the briefs and at the hearing, the Court finds Plaintiff failed to exhaust administrative remedies with regard to the claims in this lawsuit. As detailed below, this finding is based on Plaintiff's premature filing of this lawsuit only a day after submitting his grievances. Although Plaintiff testified the grievance process was unavailable at times, his testimony was undermined by the documentary evidence on a number of occasions.

Plaintiff expressed an understanding of the Jail's grievance procedure in accordance with the practice described by Capt. Collins.[2] Plaintiff acknowledged that the Captain's request/complaint process must be completed before a grievance may be filed. He further acknowledged that after filing a grievance, he had to wait for a response.

---

[2] The Jail's grievance procedure is certainly not a model of clarity. *See Belk v. Watson*, No. 19-CV-00499-JPG, 2021 WL 2292573, at *6 (S.D. Ill. June 4, 2021) (the Court commented "the Jail's procedure is not a model of clarity and could benefit from reorganization of the procedure into chronological, step-by-step order"). But even accepting that the process has the potential to breed confusion, this cannot save the Plaintiff here, because the simple fact is that once he filed the three grievances on September 20, 2020 with the Jail, he had to allow more than one day for a response from the Jail before filing suit and claiming that the process is unavailable to him. And his testimony as to the unavailability of the process was often undermined by the evidence.

However, he later contradicted this testimony and said he believed all he had to do was submit a grievance, without waiting for a response, and that was sufficient to exhaust administrative remedies prior to filing a lawsuit.

Plaintiff testified that beginning in June 2020, complaint forms were not available for four to five months. He also testified that he filed eight or nine covid related complaints. Collins was unable to dispute Plaintiff's testimony that he submitted complaints that went unanswered. "The ability to take advantage of administrative grievances is not an "either-or" proposition." *Kaba*, 458 F.3d at 685. "Sometimes grievances are clearly available; sometimes they are not." *Id*.

That said, there is other evidence that weighs against a finding of unavailability as it relates to the claims at issue. During the time period that Plaintiff claimed Jail forms were unavailable, he submitted *seventeen* grievance documents (thirteen complaints and four grievances) that are in the record. And while the Court recognizes that Plaintiff may have been in a scary and troubling situation at this time – being housed with individuals suffering from covid-19 – the gaping contradiction in Plaintiff's testimony and the documentary evidence cannot be overlooked. Seventeen grievance documents when forms were supposedly unavailable is not nothing.

Additionally, Plaintiff's testimony regarding complaints that went unanswered lacked sufficient specificity. A lack of response does not render a grievance adequate; it merely excuses the failure to take any further steps in the grievance process. A prisoner must show that he attempted to exhaust his administrative remedies but was thwarted; and that he actually filed a grievance that, if pursued through all levels of administrative

appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court. *See Anderson v. Thole*, No. 3:20-cv-00151-SMY, 2021 WL 2554111, at *2 (S.D. Ill. June 22, 2021) (citing *Sapp v. Kimbrell*, 623 F.3d 813, 823–824 (9th Cir. 2010); *Russell v. Lashbrook*, No. 19-cv-963-DWD, 2021 WL 1165120, at *3 (S.D. Ill. Mar. 26, 2021); *Walker v. Butler*, No. 19-cv-0446-SPM, 2021 WL 857355, at *6 (S.D. Ill. Mar. 8, 2021); and *Russell v. Wexford Health Sources, Inc.*, No. 3:19-CV-681-MAB, 2021 WL 793994, at *3 (S.D. Ill. Mar. 2, 2021).

Moreover, it is clear from Plaintiff's testimony that he filed these alleged complaints prior to the "emergency grievance" he submitted to Major Grime dated September 11, 2020. This filing is what covers the allegations and claims now at issue in this case. Even though Plaintiff labeled his September 11, 2020 submission as an "emergency grievance," it was submitted on a complaint form and was clearly the first step in the process (i.e. a first step complaint). Indeed, the Plaintiff testified as much and the Jail treated it as such. Further, Plaintiff testified that once he received the Jail's response dated September 17, 2020, then he filed the September 20, 2020 grievances on the Defendants. He then filed his Complaint in this lawsuit self-dated September 21, 2020, and received by the Court on September 25, 2020.

Once he initiated the grievance process, Plaintiff had to wait on the responses to the September 20, 2020 grievances and then proceed through the rest of the grievance process to fully exhaust the administrative remedies available at the Jail. At a minimum, he had to give the Jail more than a day to respond to his grievances before turning to the

Court and claiming the process was rendered unavailable to him.[3] *See Jackson v. Shepherd*, 552 F.App'x. 591, 592 (7th Cir. 2014) (inmate failed to exhaust where he filed suit only two weeks after submitting his grievance to counselor); *Jones v. Brookhart*, No. 21-CV-30-RJD, 2021 WL 6134553, at *3 (S.D. Ill. Dec. 29, 2021) (inmate failed to exhaust where he filed suit 18 days after submitting his grievance to his counselor); *Gurley v. Siddiqui*, No. 3:18-CV-473-MAB, 2020 WL 1158178, at *3 (S.D. Ill. Mar. 10, 2020) (inmate failed to exhaust where he filed suit 24 days after submitting his grievance to his counselor); *Sowemimo v. Bader*, No. CIV. 08-664-JPG, 2010 WL 2803982, at *7 (S.D. Ill. May 11, 2010), *report and recommendation adopted*, 2010 WL 2803980 (S.D. Ill. July 15, 2010) (inmate failed to exhaust where he filed suit 57 days after submitting his grievance to counselor). In sum, one day - or even four days (if you use the date the Complaint was actually filed with the Court) – is simply not enough wait time to claim the process has been rendered unavailable.

At the *Pavey* hearing, Plaintiff testified that once he submitted the three grievances on September 20, he immediately wrote up his lawsuit and submitted it to the Court. And when asked whether he prepared the grievances and the lawsuit contemporaneously, the Plaintiff acknowledged that he did. This is when Plaintiff testified that he believed all he had to do was submit the grievance before filing his lawsuit, which is inconsistent with Plaintiff's prior testimony. Plaintiff claimed that the grievance forms contained language

---

[3] These "grievances" were submitted on complaint forms. Regardless of whether the documents were intended to be second step grievances after he received the response to the September 11, 2020 complaint, or whether they were new complaints, he filed his lawsuit too soon after the submissions.

stating that this was the last step in the grievance process.[4]  Even accepting Plaintiff's testimony at face value – that he genuinely believed he had exhausted after submitting his grievances on September 20 - a prisoner's alleged lack of knowledge of grievance procedures does not excuse noncompliance with available administrative remedies. *Twitty v. McCoskey*, 226 F.App'x 594, 596 (7th Cir. 2007). The PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him." *Twitty*, 226 F.App'x at 596 (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

The only response Plaintiff received to the September 20, 2020 grievances was with regard to Trinity.  However, the grievance does not mention high blood pressure or e-cigarettes.  Further, neither Trinity nor e-cigarettes was mentioned in the September 11, 2020 complaint. Accordingly, that complaint and grievance does not exhaust administrative remedies as to any claim against Trinity in this lawsuit.

Finally, the May 3 and June 3, 2020 complaints did not exhaust administrative remedies for any claim in this lawsuit. Even if the May 3 complaint could be construed to relate to the claims in Counts 1 and 2, Plaintiff did not submit a grievance after receiving the response dated May 4, 2020.  He did not testify that he was unable to obtain a grievance form at that time. Further, as previously stated, the documentary evidence belies Plaintiff's contention that forms were unavailable for four to five months starting

---

[4] Again here, this testimony is not credible and is undermined by the documentary evidence. The grievances in the record, including the grievances Plaintiff attached to his complaint, do not include any such language.  (Doc. 1, p. 8; Doc. 80-3, pp. 2, 13, 22).

in June 2020,. And, the June 3, 2020 complaint, which grieved an incident that occurred on May 4, 2020, was untimely and does not appear to address any issue in this case.

For these reasons, Plaintiff failed to exhaust administrative remedies on the claims in this lawsuit.

## RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **ADOPT** the foregoing findings of fact and conclusions of law, **GRANT** the motions for summary judgment on the issue of exhaustion of administrative remedies (Docs. 78, 80, 81), and **DISMISS without prejudice** the claims in Counts 1, 2, 3, and 4 against all Defendants and this action in its entirety.[5]

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Report and Recommendation within 14 days of service (*see* attached Notice). The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**DATED: March 8, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[5] "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).